Commonwealth *v.* Burns, Appellant.

334

Argued June 10, 1969. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Henry L. Menin,* for appellant.

*Paul W. Tressler,* Assistant District Attorney, with him *Richard A. Devlin,* Assistant District Attorney, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., September 11, 1969:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, by the defendant-appellant, David Burns, after his conviction of burglary, larceny, conspiracy to commit burglary and larceny, and illegal possession of burglary tools and carrying a concealed deadly weapon; and from the denial by the court below of his post-conviction motions.

The Gwyn Dale Diner was broken into and burglarized by three men at approximately 2 a.m. on May 5, 1967. The police became aware of the burglary by virtue of an alarm so that they arrived while the crime was being perpetrated. There was testimony that three men were seen coming out of the building. Two of these men, Schuyler and Sullivan, were immediately arrested. The defendant was arrested later at his place of employment. His arrest was brought about by finding of his car parked in the immediate vicinity of the burglarized premises and evidence obtained from the car and motel room, where all three men were staying, as a result of search warrants.

All three men were indicted and on June 21, Schuyler and Sullivan pleaded guilty and were sentenced to pay the costs and to undergo imprisonment for not less than 2½ years nor more than 5 years; sentence was suspended on other indictments.

The defendant pleaded not guilty and on June 26 went to trial. He was convicted of all charges except receiving stolen goods on which the court directed a verdict of not guilty. His post-conviction motions were denied. He was sentenced to pay the costs of prosecution and undergo imprisonment for not less than three years nor more than seven years on the one charge. Sentence was suspended on the other charges.

The appellant contends that he is entitled to a new trial because of admission of evidence obtained by ille-

gal search and seizure warrants and because of a conflict of interest of counsel who represented him at trial and also represented the defendants who pleaded guilty.

After the arrest of the two men and failure to apprehend the third, a police officer noticed an automobile parked on the adjoining parking lot. It was the only car parked in the area. The car was later found to be registered in the name of the defendant. The officer went to the car and directed his flashlight into the interior. The key was in the ignition and he noticed two jackets on the rear seat. He took the key out of the car to immobilize it and looked in the coats for identification. Neither disclosed ownership so he restored them to the seat. He then observed from outside the car a motel key on the floor of the car with the name "Colony House Motel, Norristown" inscribed on it. We agree with the Commonwealth that up to this point what he saw was in plain view and what he did to immobilize the car and attempt to determine ownership of the parked vehicle immediately adjacent to the burglarized premises was only permissible police investigation and was not, in fact, a search.

The officer as a result of his visual examination of the interior of the car informed his superior, Sergeant Herr of the police department, that as a result of his investigation, and the location of the car that he was suspicious that the car belonged to the fugitive who was involved in the burglary and that a search warrant should be obtained. In the meanwhile, it was discovered that three men had registered at the motel in Norristown. The two under arrest and a third man, the defendant, who turned out to be the owner of the automobile. Under these circumstances, the officer also asked his superior to secure a search warrant for the motel room.

A number of articles were found in the car as described in the warrant including tools, which the Com-

monwealth contends were burglary tools, and a revolver that connected the defendant with the crime. In the motel where all three stayed registered under fictitious names the jacket that the officer had seen on the rear seat of the defendant's car was found so that it was removed between the time that it was observed by the officer and the search of the car by warrant.

It is quite likely that if not for the prompt action of the police officer in removing the key the car would have been gone by the time the officer returned with the warrant. Someone returned and removed the jacket and as the two men were in custody the inference is clear that it must have been the owner of the car and the jacket who removed it to the room where he and the others were staying.

"The right to search an automobile is not unlimited, but searches of them must be viewed in the light of the obvious capability of a vehicle to remove the criminal, his victim, his loot, his weapon, his tools and contraband from the locale of the crime. . ." *Commonwealth v. Katz,* 202 Pa. Superior Ct. 629, 634, 198 A. 2d 883 (1964). See, also, *Chimel v. Calif.,* 395 U.S. 752, 23 L. Ed. 2d 685.

Sergeant Herr of the police department who swore to the information to obtain the warrant was not at any time prior to its issuance on the scene of the crime. The information given to the magistrate was based on the account given to him of all the circumstances by patrolmen who had been on the scene. It is true that the information and affidavit to obtain the warrant were silent as to this fact.

"Despite earlier cases to the contrary it is now settled that at least in the federal courts hearsay evidence may provide the probable cause necessary for the issuance of a search warrant where a substantial basis for crediting the hearsay evidence is presented." 10

A.L.R. 3d 359-364. *U.S. ex rel. Palladino v. Gable,* 281 F. Supp. 69 (1968). This is true in most states and is the law in Pennsylvania. *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966). Information obtained from a confidential informant may be sufficient to establish probable cause for issuance of a search warrant where the informant previously proved reliable. All the circumstances taken together may sometimes supply probable cause where each item individually would fail. *U.S. v. Delia,* 283 F. Supp. 470.

The complaint concerning the failure to disclose the informant was not argued below and is not discussed in the opinion of the court below. But it was strenuously argued orally and by brief before this Court on the basis of *Aguilar v. Texas,* 378 U.S. 108 (1964). The appellant contends that even though the information and affidavit may have been based on hearsay and even if the identity of the informer need not be disclosed, the magistrate must be informed of the underlying circumstances and the credibility and reliability of the informer. Information obtained from a confidential informant may be sufficient to establish probable cause for issuance of a search warrant where the information sometimes supplies probable cause for issuance. *U.S. v. Delia,* supra. See also, *Com. v. Altizer,* 213 Pa. Superior Ct. 201, 245 A. 2d 692 (1968).

We held in *Com. v. Crawley,* supra, that the identity of an informant upon whose information a search warrant was secured need not be disclosed. In the instant case there was no confidential informer in the sense that this term is used. Here, the information was police department information not obtained from an outside informer but information given by a patrolman to his superior in the police department concerning the commission of a felony interrupted by the police. Most

certainly, no more reliable source of information could come to the sergeant than from his own agent who reported the circumstances of the commission of the crime to his superior. This complaint is without merit.

The Commonwealth is prohibited from using any evidence obtained by unreasonable searches and seizures. *Mapp v. Ohio,* 367 U.S. 643. In *Com. v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963), at page 65 the Supreme Court held: "In passing upon the 'unreasonableness' of a search and seizure, a preliminary, and most important, question is whether Mapp requires that state courts determine the 'reasonableness' of such search and seizure in accordance with federal and state standards. To that question Mapp gives no direct answer. However, a study of Mapp would indicate that, at least by implication, state courts are still free to apply their own, rather than the federal, criteria of 'reasonableness.'

"The 'reasonableness' of a search and seizure must be determined on an ad hoc basis, i.e., on the facts and circumstances of each particular case. In U.S. v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 434, the Court said: 'What is a reasonable search [and seizure] is not to be determined by any fixed formula. The Constitution does not define what are "unreasonable" searches and regrettably, in our discipline we have no ready litmus paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case.' " (Citing cases)

The defendant contends that even if the Sergeant is permitted to swear to the information without setting forth from whom it was obtained the information is still defective and fails to give the magistrate sufficient factual data from which he could make an independent judgment that probable cause existed for the issuance of the warrant.

The search warrant information sworn to by Officer Herr states: "Before me, a Justice of the Peace, in and for said (Montgomery) County and State, personally appeared Sgt. William E. Herr, of Upper Gwynedd Township Police, County and State aforesaid, who being duly qualified according to law, deposes and says that on or about the 5th day of May, 1967, the following goods and chattels, to wit; revolvers and automatic pistols; rifles; jewelry; narcotics and drugs; television set; radios; clothing; furs; burglary tools; masks and other contraband; were by some person or persons, feloniously stolen, taken and carried away out of the Gwyn-Dale Diner, Rt. 202, a one story building with a stainless steel face and white plaster sides and rear, and that the said goods and chattels, as the complaint has just and reasonable cause to suspect and believe, and does suspect and believe, are concealed in a 1961 white Plymouth Fury convertible with black top, Pennsylvania Reg. #OE6143 at county of Montgomery and state of Pennsylvania."

It is indicated in the body of the warrant that there was additional information as certain blanks remained unfilled which counsel for the defendant indicates as follows: ". . . We agree with the court below that: We are satisfied that the officer could not have been more 'reasonable' in what was done in this case. The car was found on an adjoining parking lot to that of the burglary scene. It was the only car around; they took only the keys at first, and later returned with a search warrant with which they removed the jackets on the inside of the car, and then opened the trunk of the vehicle and removed the revolver and other 'tools', which fitted quite naturally the pattern of 'work' in which the defendant was alleged to have been engaged. There appears to be no deficiency in the warrant, the probable cause was immediately apparent to the affiant, and

certainly no constitutional principle has yet been interpreted to mean that the officers can not intelligently assimilate and apply those facts which immediately beg for attention when they come upon them, and the identification of the automobile and the items which were being searched for, were sufficiently accurate in the descriptive detail contained in the warrant, to satisfy the legal requirements."

*Aguilar v. Texas,* supra, sets forth the guidelines for the issuance of a search warrant based on probable cause. *Kerr v. Calif.,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, held the Fourth Amendment proscriptions in reference to searches, are enforced against states under the Fourteenth Amendment. See, also, *Commonwealth ex rel. Ensor v. Cummings,* 416 Pa. 510, 207 A. 2d 230 (1965); *Commonwealth v. Patti,* 205 Pa. Superior Ct. 379, 209 A. 2d 17 (1965); *Commonwealth v. Ametrane,* 205 Pa. Superior Ct. 567, 210 A. 2d 902 (1965).

Under the guidelines, quantum of proof which constitutes probable cause is such evidence which would lead a man of reasonable caution to believe that a felony had been committed and depends on the facts of the individual case. Knowledge that a specific crime has been committed, as in this case, is a weighty element in determining probable cause. *Commonwealth v. Altizer,* 213 Pa. Superior Ct. 201, 245 A. 2d 692 (1968). The magistrate in making his independent and detached appraisal that probable cause exists must do so in a common sense rather than technical manner. *Commonwealth v. Rose,* 211 Pa. Superior Ct. 295, 235 A. 2d 462 (1967).

A common sense approach and an examination of all the circumstances of each particular case is necessary in arriving at an independent judgment. Warrants are entitled to preferred consideration and the

burden is on the defendant to overcome the presumption of the validity of the function performed by the magistrate. In marginal cases the benefit of any doubt should be accorded the validity of the warrant. *Commonwealth v. Ametrane,* supra; *Commonwealth v. Evans,* 210 Pa. Superior Ct. 454, 233 A. 2d 585 (1967); *U.S. v. Scolnich,* 392 F. 2d 320; *U.S. v. Ventresca,* 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

In the instant case the commission of the felony is a completed fact as the police interrupted its commission and apprehended two of the three culprits. The search of the car was an attempt to find the fruits of the crime and evidence connecting the fugitive defendant with it.

"In Pennsylvania when a warrant is under attack on the ground that there are insufficient facts to support a finding of probable cause, the rule has been that the sworn facts told to the magistrate at the time the warrant was issued are admissible to support the finding of probable cause." *Commonwealth v. Crawley,* supra. *Crawley* also held that this rule was not in conflict with the Fourth Amendment to the United States Constitution nor the Pennsylvania Constitution.

It follows, therefore, that what is included in the writing is not the sole criterion upon which probable cause may be adduced. Although this record does not disclose the nature of such oral testimony, the writing indicates that all that was given to the magistrate was not reduced to writing. It is difficult to believe that a more expansive recitation of the circumstances was not given to him.

The defendant, although complaining that the warrant was defective, did not raise below the complaint strenuously argued here concerning the Sergeant not being present at the scene of the crime or his failure to disclose that his recitation was hearsay. Counsel

had ample time to examine the warrants and should have filed a petition to suppress under Pennsylvania Rules of Court, 1969, Rules of Criminal Procedure, Rule 2001, when at a full hearing the whole story of what was written and what was told the magistrate would come to light. *Garcia v. United States,* 315 F. 2d 133 (1963).

He did not so petition and the court below exercising its discretion determined that his conduct did not constitute a waiver to raise the issue at the time of trial. Argument was heard on the merits and the court determined, purely on the face of the warrant, and without any testimony to prove probable cause, that the warrants were legal and admitted the evidence. See *Commonwealth v. Pinno,* 211 Pa. Superior Ct. 434, 236 A. 2d 569 (1967).

The defendant, once the court held that he did not waive his objection to the legality of the warrant by failure to file for suppression under Rule 2001, had a procedural remedy to secure testimony as to what information actually came to the magistrate. Under Rule 2001(h) it is provided: "When the court of a prosecution county receives an application for relief during trial, it shall consider the application out of the hearing of the jury in the first instance, receiving such evidence as may be necessary to a proper determination of the issue. . ." See also NOTE, Rule 2001, page 515: "The opportunity is left available so that an aggrieved defendant can make such motion at trial, (motion to suppress) if necessary to protect his rights."

The defendant not only failed to proceed to suppress under Rule 2001 prior to trial, but then failed to proceed under the same rule at trial, relying solely on his objections to the legality of the warrants and failing to call either the magistrate or Herr to relate the actual facts, given to the magistrate. Herr was in

court during the entire trial. This conduct constituted a waiver so that he failed to sustain his burden of proof.

The question of conflict of interest has run the gamut of semantics since *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A. 2d 641 (1962). This case held at page 48 that "if in the representation of more than one defendant a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no actual harm results. The potentiality that such harm may result, rather than that such harm did result, furnishes the appropriate criterion."

The Supreme Court further defined the meaning of *Whitling* in *Commonwealth v. Resinger,* 432 Pa. 398, 248 A. 2d 55 (1968), where Mr. Justice COHEN, speaking for the Court, said at page 400: "where two defendants' positions are at variance (one plead guilty and the other not guilty), they may not be represented by the same counsel." See also, *Commonwealth v. Brown,* 210 Pa. Superior Ct. 136, 232 A. 2d 10 (1967); *Commonwealth v. Meehan,* 409 Pa. 616, 187 A. 2d 579 (1963); *Commonwealth v. Robertson,* 211 Pa. 79, 234 A. 2d 61 (1967).

It is true that it has been decided that no harm exists in dual representation where no conflict exists. *Commonwealth v. Wilson,* 429 Pa. 458, 240 A. 2d 349 (1968). *Wilson,* supra, and *Resinger,* supra, did not involve representation of one client who pleaded guilty and the other not guilty. Both were cases of dual representation at trial and that alone does not make out the conflict.

In *Commonwealth v. White,* 214 Pa. Superior Ct. 264, 252 A. 2d 204 (1969), this court held that where one client pleads guilty and another not guilty, such variance of itself creates a possibility of harm, and they may not be represented by the same counsel.

A further refinement in the rule is found in *Commonwealth v. Wilkinson*, 214 Pa. Superior Ct. 365, 257 A. 2d 597 (1969), where one client pleaded guilty to charges of burglary, larceny and receiving stolen goods, the other client pleaded guilty only to receiving stolen goods and all other charges against him were nolle prossed so he went to trial with the same counsel on this charge and was convicted. This Court held that this case was distinguishable from *Commonwealth v. White*, supra, and fell into the dual representation cases represented by *Commonwealth v. Wilson*, supra, and sustained the court below in refusing a new trial.

In the instant case the defendant, Schuyler and Sullivan were all represented by the same private counsel. Schuyler and Sullivan pleaded guilty; the defendant pleaded not guilty and went to trial. Schuyler and Sullivan appeared as witnesses and tried to absolve the defendant. All three were sentenced on all charges and were represented by the same counsel. This case is a classic example where, as under *Whitling*, the conflict arose by the nature of the pleas and the inherent possibility of harm and even though no harm resulted the proceedings are vitiated.

Judgment of sentence reversed and a new trial granted.

---

CONCURRING OPINION BY SPAULDING, J.:

Since we have granted appellant a new trial due to a conflict of interest of counsel, I do not believe we should pass on the search and seizure claims advanced by appellant.

The majority alternatively hold that appellant's failure to obtain a pre-trial suppression hearing is a procedural waiver barring review of the claim that the two search warrants were issued in violation of *Aguilar v. Texas*, 378 U.S. 108 (1964), and, on the

merits, the warrants were constitutionally issued. Neither holding is necessary to our decision.

As appellant failed to raise the *Aguilar* claims in the court below, they are not properly before the Court in this appeal. *Chaniewicz v. Chaniewicz*, 214 Pa. Superior Ct. 294, 257 A. 2d 605 (1969). Moreover, even if appellant's waiver precludes relief on these claims in this appeal, it does not prevent him from moving to suppress the seized evidence prior to his forthcoming trial.\*

In my view, appellant's failure to request a suppression hearing has deprived the Commonwealth of the opportunity to demonstrate on the record the existence and content of oral testimony given by Officer Herr to the issuing authority. I cannot agree with the majority that we may merely assume, without such evidence on the record, that oral testimony establishing probable cause was presented to the justice of the peace.

Moreover, whether the warrants can meet the *Aguilar* requirements on the basis of the sworn affidavits alone presents a substantial question. As a pretrial suppression hearing will afford the Commonwealth the opportunity to present evidence which may obviate the necessity for determination of this issue, I believe consideration of the merits of the *Aguilar* claim should be deferred.

------

\* A procedural waiver of the opportunity to obtain suppression prior to a first trial does not foreclose the opportunity to suppress if after conviction a new trial is granted on other grounds. The purpose of the waiver requirement, to prevent delay and confusion at trial, is not served when retrial, and a consequent second opportunity for pretrial consideration, is necessary. Under *Henry v. Mississippi*, 379 U.S. 443 (1965), explained in *Commonwealth v. Snyder*, 427 Pa. 83, 233 A. 2d 530 (1967), a bypass of state procedure for litigation of a federal constitution claim may bar consideration of the federal claim only if enforcement of the waiver requirement is necessary for advancement of a substantial state policy.

Accordingly, I concur in the result and join only that portion of the opinion of the Court relating to conflict of interest.

HOFFMAN, J., joins in this concurring opinion.

---

DISSENTING OPINION BY JACOBS, J.:

Appellant asks for a new trial which the majority grants because of conflict of interest of appellant's counsel. Appellant and two codefendants were represented by the same private counsel. At arraignment appellant pleaded not guilty and his codefendants pleaded guilty. This, the majority says, under the Supreme Court's rule laid down in *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A. 2d 641 (1962), as interpreted in *Commonwealth v. Resinger*, 432 Pa. 398, 248 A. 2d 55 (1968), precluded counsel from representing all three defendants. While this may be true as to representation at arraignment, the appellant is not asking to change his plea but requests a new trial alleging conflict of interest on the part of his counsel at trial. I am unable to find such conflict.

When appellant's two codefendants pleaded guilty they were sentenced by the court. Several days later the appellant went to trial. At that trial the two codefendants testified on his behalf to the effect that appellant did not participate in the burglary with which he was charged and to which they had pleaded guilty. Inasmuch as the codefendants had been sentenced, I am unable to see any conflict of interest between them and the appellant at the time of trial. As a practical matter counsel represented only the appellant at trial.

I respectfully dissent and would affirm the lower court.

WRIGHT, P. J., and MONTGOMERY, J., join in this dissenting opinion.